Filed 4/17/26  In re K.W. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.W. et al., Persons Coming Under the Juvenile Court Law. | B347999<br><br>(Los Angeles County Super. Ct. No. 23CCJP02324A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>C.W.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai, for Plaintiff and Respondent.

──────────────────

Appellant C.W. (mother) appeals from juvenile court findings and dispositional orders sustaining petitions under Welfare and Institutions Code sections 342 and 387 and requiring her to participate in drug treatment and testing.[1] We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, the Department of Child and Family Services (DCFS) received a report that mother had been arrested for carjacking and grand theft auto, and that mother had four-year-old Khalil W. with her when she committed both crimes. DCFS obtained a removal order as to Khalil and detained the child from maternal uncle's home. The child smelled of urine and feces, and his clothes were wet and soiled.

Mother admitted to a DCFS social worker that she had been arrested, but she denied committing any crimes and asserted that the arrests stemmed from misunderstandings relating to her business of buying and selling used cars. Mother also denied that Khalil was with her at the time of the incident.

Mother reported that four of her other children had been removed from her custody by authorities in Texas based in part on her cocaine use. She said that she had been clean for six years.

───────────────

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

DCFS filed a petition pursuant to section 300 alleging that mother exposed Khalil to criminal acts, and that this endangered the child and placed him at risk of serious physical harm and danger.  At the July 2023 initial hearing, the juvenile court detained Khalil from mother's care.  The court sustained the petition in November 2023, declared Khalil a dependent of the court, and ordered family reunification services for mother.

Mother told a DCFS social worker that she was due to give birth to another child in late December 2023 or early January 2024.  In February 2024, DCFS received a report that mother had left a baby in a car for several hours while she sold drugs.  The caller also reported that mother used crack and methamphetamine around the baby.  A DCFS social worker contacted mother by phone on February 28, 2024, and mother claimed that she was still pregnant.  The next day, mother told a different social worker that she had miscarried.  In March 2024, mother's parole officer informed DCFS that mother had reported that she was in labor on December 14, 2023.

Mother agreed to meet with a DCFS social worker on April 4, 2024 to relinquish the baby, Kyra W., but mother did not show up.  DCFS filed a section 300 petition as to Kyra later that day.  The petition alleged that Kyra was at risk of harm based on mother's treatment of her sibling, Khalil.  The juvenile court detained Kyra at the April 5, 2024 initial hearing.  In May 2024, the court sustained the section 300 petition as to Kyra, and in June, it declared her a dependent of the court.  The court ordered mother to participate in parenting classes, individual counseling, and random and on-demand drug testing upon reasonable suspicion.  Mother tested negative for drugs six times between April and June 2024.

At the June 2024 six-month review hearing as to Khalil, the juvenile court determined mother's progress was unsubstantial and it ordered continued family reunification services.

In September 2024, at a combined 12-month review hearing for Khalil and progress hearing for Kyra, the court terminated the placement orders as to the children and returned them to mother's home. The court cited mother's "great progress in programs" and her "protective capacity and insight into the issues that brought the case before the court." The court ordered family maintenance services.

In February 2025, mother was arrested for robbery. A detective told a DCFS social worker that mother was "involved" in the crime, but she had not been charged. According to the detective, the children were not present during the incident, but they were there when mother was arrested. Mother was incarcerated after the arrest and she left the children with maternal great aunt. Mother's probation was revoked. On February 18, she was released pending a violation hearing.

Mother denied that she was involved in any robbery. She claimed that someone else robbed a street vendor while she was nearby. Mother said that the children were with maternal grand aunt at the time of the incident. A few days later, maternal grand aunt told the social worker that the children were not with her during the alleged robbery and that "she no longer wanted to cover for mother."

Maternal grand aunt also reported that she found a small plastic bag containing white powder in Khalil's backpack, which she believed to be crack cocaine. She also found a gun in a jacket in mother's motel room. Maternal grand aunt was scared to have

4

these items in her possession, so she gave the plastic bag to drug users in an alley and she gave the gun to a friend. Mother denied selling drugs, asserted that the white powder was baby formula, and claimed that the firearm was a BB gun.

On March 3, 2025, DCFS obtained a removal order as to the children. Mother initially refused to relinquish the children when presented with the order. DCFS contacted law enforcement and detained the children after police arrived at the scene.

On March 5, 2025, DCFS filed a supplemental petition for a more restrictive placement under section 387. The petition alleged that the previous disposition was ineffective because mother engaged in unlawful activities resulting in revocation of her probation and failed to comply with her case plan by missing six parenting classes (the s-1 count). It further alleged that mother's conduct endangered the children's safety and placed them at risk of serious physical harm. The next day, the juvenile court detained the children from mother's care. The court gave DCFS discretion to place the children with mother if she tested clean for drugs.

Between March and May 2025, mother tested negative for drugs eight times and failed to appear for two tests. On May 21, 2025, mother tested positive for cocaine. When she was contacted by a DCFS social worker, mother denied using drugs. She said that she took an unidentified pain medication that she obtained from a relative two days before the test. Mother tested negative on May 28, 2025.

In June 2025, DCFS amended the section 387 petition to also allege that mother had tested positive for cocaine in May 2025 (the s-2 count). DCFS also filed a subsequent petition under section 342. The section 342 petition alleged that mother had a

5

history of substance abuse, that she was a current abuser of cocaine, and that she had tested positive for cocaine in May 2025 (the b-1 count). It further alleged that mother kept drugs and a firearm where the children could access them (the b-2 count). The section 342 petition alleged that this conduct endangered the children and placed them at risk of serious physical harm.

In July 2025, the superior court terminated mother's probation and sentenced her to two years in prison. Mother told DCFS that she expected to serve approximately six months in prison. She expressed interest in receiving family reunification services.

On August 1, 2025, the court held an adjudication hearing to address the section 342 petition and the amended section 387 petition. Mother submitted on the s-1 count in the original section 387 petition, which alleged that mother's probation had been revoked and that she failed to regularly participate in services. As for the section 342 petition, mother argued that her single positive drug test was insufficient to support the b-1 allegations, i.e., that she had a history of substance abuse and that she was a current abuser of cocaine. Mother asked the court to not order her to participate in drug treatment. Mother also asked the court to dismiss the b-2 count, which alleged that mother kept drugs and a firearm in the children's presence, on the basis that the evidence was insufficient because maternal great aunt disposed of both items.

The juvenile court sustained the section 387 petition.[2] It also sustained the section 342 petition with modifications. Specifically, the court amended the b-1 count to allege that

---

[2] The court amended both counts, but the amendments are not relevant to any disputed issue on appeal.

6

mother was a recent, rather than current, cocaine abuser. The court struck the b-2 count for insufficient evidence. The court found that the children continued to be dependents of the court and found by clear and convincing evidence that they would be at risk of harm if returned to mother's home.

The court ordered mother to complete a full drug and alcohol program with aftercare and weekly random or on demand drug and alcohol testing. The court stated: "it's a generous gift that the Department is providing mother with continued reunification services," and "[t]he fact that the Department has not asked for a court card with [narcotics anonymous] or [alcoholics anonymous] is also a gift."

Mother timely appealed from the orders sustaining the petitions brought under sections 342 and 387.

## DISCUSSION

### I. Mootness and dependency jurisdiction

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id.* at p. 1490.) Thus, " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other

7

alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Mother acknowledges that her appeal does not challenge the sustained allegations in the s-1 count of the section 387 petition. Mother also did not appeal from the juvenile court orders sustaining the section 300 petitions as to the children. Thus, even if we were to reverse the findings mother has challenged, we would nonetheless affirm the juvenile court's exercise of jurisdiction over the children, meaning mother's appeal is arguably moot.

"However, where a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot." (*In re D.P.* (2023) 14 Cal.5th 266, 283.) Mother argues that the drug-related findings serve as the basis for the dispositional orders requiring her to complete a drug treatment program and participate in drug testing. Indeed, if the findings relating to mother's drug use are unsubstantiated, the dispositional orders may be subject to reversal, meaning mother's appeal is not moot. DCFS does not object to this court reviewing mother's arguments on the merits. Accordingly, we will address the merits of mother's appeal.

## II. The juvenile court's findings are supported by substantial evidence

Mother argues that the evidence is insufficient to support the juvenile court's findings that mother was a " 'recent abuser of cocaine' " and that her alleged drug abuse placed the children at substantial risk of serious physical harm. For the following reasons, we disagree and affirm.

## A. *Applicable law and standard of review*

When DCFS learns of new facts supporting section 300 jurisdiction over a minor already "found to be a person described by Section 300," DCFS "shall file a subsequent petition" alleging such facts. (§ 342, subd. (a).) In addition, DCFS may file a supplemental petition alleging "facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child . . . ." (§ 387, subd. (b).) We review findings in orders entered under sections 342 and 387 for substantial evidence. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1453 [§ 342]; *In re A.O.* (2010) 185 Cal.App.4th 103, 109 [§ 387].)

Substantial evidence is that which is " 'reasonable, credible, and of solid value . . . .' " (*In re I.C.* (2018) 4 Cal.5th 869, 892 (*I.C.*).) In reviewing for substantial evidence, " 'we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206 (*E.E.*).)

## B. *Substantial evidence supports the challenged findings*

Mother first argues that substantial evidence does not support the juvenile court's finding, in sustaining the section 342 petition, that mother was a " 'recent abuser of cocaine.' " However, mother does not support this argument with any

9

reasoned analysis or legal authority, as is her burden on appeal. (*E.E.*, *supra*, 49 Cal.App.5th at p. 206.)  And the case law on which mother primarily relies, *In re Rebecca C.* (2014) 228 Cal.App.4th 720 (*Rebecca C.*), supports such a finding under nearly identical circumstances.  In *Rebecca C.*, the juvenile court exercised jurisdiction based on the mother's drug abuse.  The appellate court noted that the mother had used drugs for several years, became involved in the criminal and dependency court system based on her drug use, began treatment and relapsed, and lied about her drug use.  (*Id.* at p. 726.)  The court reasoned that "recognized professional publications" had identified similar factors as relevant to the diagnosis of substance abuse, and affirmed the lower court's finding that the mother was a drug abuser.  (*Id.* at p. 727.)  Similarly, here, mother admitted that four of her children were removed from her care by Texas authorities based in part on her cocaine use.  Although mother had been clean for six years and tested negative several times during the underlying proceedings, she missed two tests and tested positive for cocaine in May 2025.  And after the positive test, mother denied that she had used drugs.  Taken together, this evidence is sufficient to support a finding that mother was a recent abuser of cocaine.  (*Ibid.*; *I.C.*, *supra*, 4 Cal.5th at p. 892.)

As mother correctly recognizes, drug abuse, " '*without more,*' does not bring a minor within the jurisdiction of the dependency court.  [Citation.]" (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003.)  The juvenile court must also find that the parent's drug abuse posed "a specific, nonspeculative and substantial risk" to the children.  (*Ibid.*)  Mother asserts that the evidence was insufficient to support the juvenile court's findings, in sustaining both petitions, that mother's drug abuse placed the

children at substantial risk of serious physical harm. We disagree. "[A] child's youth and maturity level can bear upon the care that the child may require and whether a parent's or guardian's substance abuse places the child at substantial risk of serious physical harm." (*In re N.R.* (2023) 15 Cal.5th 520, 559 (*N.R.*).)[3] By the time of the relevant hearing, Khalil was six years old and Kyra was just 19 months old. Mother's recent substance abuse created a risk that she would be unable to care for her young children, who needed constant or near-constant supervision. Mother's refusal to admit that she had used cocaine after the positive test also supports that the children were at substantial risk of harm. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 [denial is a relevant factor in assessing whether parent is likely to change behavior]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) And mother's historical drug use further supports such a finding, as it demonstrates the risk that mother might relapse again. (*In re D.B.* (2018) 26 Cal.App.5th 320, 332 [juvenile court may consider "parent's past conduct"].)

Mother's reliance on *Rebecca C.* is misplaced. In that case, after affirming findings that the mother had abused drugs, the appellate court nonetheless reversed because the evidence did not support a finding that the mother's drug abuse created a substantial risk of harm to the child. (*Rebecca C.*, *supra*, 228

---

[3] In *N.R.*, our high court rejected the "tender years presumption" and cautioned that a parent's alcohol or drug use alone is insufficient to support a finding that the parent is unable to care for a young child. (*N.R.*, *supra*, 15 Cal.5th at p. 558.) Our decision does not rely on any such presumption. We merely recognize that the juvenile court was permitted to consider the children's young age.

Cal.App.4th at p. 727.)  But in *Rebecca C.*, the child was a teenager, meaning she did not need constant supervision and had some capacity to protect or distance herself from her mother's drug abuse.  As we have discussed, the very young children in this case were more reliant on their caretaker and thus at greater risk of harm.  In addition, in *Rebecca C.* the appellant mother admitted she made a mistake and "committed herself to a program" after relapsing.  (*Ibid.*)  In contrast, here, mother claimed the positive cocaine test was false, and she has resisted drug treatment.  Based on the whole record, the evidence is " 'reasonable, credible, and of solid value,' " and is sufficient to support a finding that mother's drug abuse posed a substantial risk of harm to her young children.  (*I.C.*, *supra*, 4 Cal.5th at p. 892.)

### III.   Mother has not established any basis to reverse the dispositional orders

Mother also asks this court to reverse the dispositional orders requiring her to complete a full drug and alcohol program with aftercare and random drug testing.  Mother's argument appears to be contingent on the success of her challenge to the findings as to mother's drug abuse.  Because we affirm those findings, we also affirm the dispositional orders.

Moreover, we agree with DCFS that the juvenile court did not abuse its discretion in issuing the dispositional orders, regardless of the nature of its findings.  The court has broad discretion to fashion an appropriate dispositional order that will serve the children's best interests.  (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)  Importantly, the court "is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the

12

children." (*Ibid.*) For example, in *In re Christopher H.* (1996) 50 Cal.App.4th 1001, the appellant father tested positive for methamphetamine and had been convicted for driving under the influence. Although the juvenile court did not sustain jurisdictional allegations that this conduct placed the child at risk, the appellate court found no abuse of discretion in a dispositional order requiring father to complete random drug and alcohol testing. (*Id.* at p. 1008.)

Citing mother's history of drug use and her recent positive cocaine test, DCFS argues that the juvenile court would not have abused its discretion in entering the dispositional order, even if it had not sustained findings based on mother's drug abuse. We agree. Mother admitted that she has a history of cocaine use, and she tested positive for that drug in May 2025. We cannot say that the dispositional order requiring mother to participate in drug treatment and testing was "arbitrary, capricious or patently absurd," nor that it "exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.) Thus, even if we were inclined to reverse the findings that mother was a recent drug abuser, we would find no abuse of discretion in the dispositional orders.

## DISPOSITION

The juvenile court's dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

ADAMS, J.